IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SYLEJMAN SYLEJMANI | § § | |
| VS. | § § | CA No. _____ |
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON | § § § | |

## **PLAINTIFF'S COMPLAINT**

This is a suit for damages and other relief by Plaintiff Sylejman Sylejmani against Certain Underwriters at Lloyd's, London.

## **Parties**

1. Plaintiff is a resident citizen of Ferial, Kosovo.

2. Defendant, Certain Underwriters at Lloyd's issuing Policy No. 1799950 ("Lloyd's of London"), is a Lloyd's syndicate engaged in the business of insurance in Harris County, Texas. This defendant may be reached for service of process by serving its registered agent, Mendes and Mount, LLP, 750 Seventh Avenue, New York, New York 10019-6829, or by serving the statutory agent for service of process, the Texas Commissioner of Insurance, Texas Department of Insurance, 333 Guadalupe, Austin, Texas 78701, or wherever it may be found.

## **Jurisdiction and Venue**

3. This Court has diversity jurisdiction of this action under 28 U.S.C. §1332 because the parties are completely diverse. Mr. Sylejmani is a citizen of Kosovo and Lloyd's of London is a domestic or foreign insurance company licensed to do business and

1

doing business in the state of Texas. In addition, the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is proper in this District and Division pursuant to 28 U.S.C. §1391 because a substantial part of the events giving rise to this claim occurred in this district, the subject insurance policy has a Texas choice of law clause, and Defendant maintains business activity in and is in this district.

## Statement of Facts

5. Lloyd's of London is in the insurance business and sells various forms of disability insurance, life insurance, and accidental death & dismemberment insurance. The promise of disability insurance is to provide income protection if an insured becomes disabled as a result of injury or sickness.

6. Implicit in the promise of the Lloyd's of London Insurance policy is that it will timely, fairly, and objectively adjust and pay a covered claim. If in doubt about the cause or nature of the insured's disability, Lloyd's of London implicitly promises to fairly and objectively investigate the claim and promptly pay if the claim meets the policy requirements.

7. Mr. Sylejmani began working for Fluor Corporation in December 2009.

8. In April 2017, Sylejman Sylejmani applied for Accidental Permanent Total Disability Insurance Benefits with Lloyd's of London. Lloyd's of London issued Policy No. 1799950 (the "Policy") with an effective date of April 15, 2017. The Policy promised to pay a lump sum of $500,000 if the insured suffered an accidental permanent total disability.

9. The Policy defines Permanent Total Disability as "if solely due to an Accident, You are not able to perform the substantial and material duties of Your Occupation and

in the opinion of Competent Medical Authority recovery from such disability is not expected, even if You are at work in another occupation".

10. The Policy defines Accident as "any sudden, unexpected, external event at an identifiable time and place . . . which results in bodily injury independent of Sickness".

11. On July 29, 2017, Mr. Sylejmani underwent a physical examination in connection with his job. He was determined to be "fit for duty" in accordance with the physical and psychological standards set forth by the United States Central Command's MOD 13[1].

12. In 2018, Mr. Sylejmani worked as a foreman/food service lead in Afghanistan. As many who have been stationed there know, the job involved significant challenges. During his time there, Mr. Sylejmani witnessed rocket attacks, suicide bombers, and the blood and human remains left behind from those attacks. The job itself was a heavy occupation, requiring him to lift and move heavy objects. He helped serve food to 2,500 to 2,70o people per day.

13. On February 7, 2018, Mr. Syeljmani was helping another employee move a heavy mixing bowl filled with dough when he injured his back. Although he felt pain in his back, he was able to work the rest of his shift.

14. The next morning, the pain was overwhelming. Mr. Syeljmani was barely able to get out of bed and on his clothes. He was examined at Fluor Preventative Medicine, given a painkiller, and released to return to work for the rest of the day.

15. Later that same day, Mr. Sylejmani was fired by Fluor Corporation.

---

[1] These physical and psychological screening standards apply to U.S. service members, government civil employees, Department of Defense contractor employees, and volunteers deploying to CENTCOM's area of responsibility.

16. In firing Mr. Sylejmani, Four Corporation contended that he and another coworker were involved in a physical altercation with a subordinate, Deepak Roy. This was a false accusation, and Mr. Sylemani provided testimony from witnesses who disputed Mr. Roy's fabrication. However, Fluor Corporation did not let the facts get in the way of firing Mr. Sylejmani. He was placed on a flight home to Kosovo on February 9, 2018.

17. Mr. Sylejmani has not worked since that time.

18. A February 13, 2018 MRI of Mr. Sylejmani's back revealed bulging discs at L1-S1, as well as spondylodiscitis. Spondylodiscitis is a primary infection (accompanied by destruction) of the intervertebral disc, with secondary infections of the vertebrae. It can lead to osteomyelitis of the spinal column. It is a rare, serious infection with a high mortality rate[2].

19. Dr. Nehat Halili, Mr. Sylejmani's treating physician, opined with reasonable degree of medical certainty that the February 7, 2018 injury caused this condition.

20. Dr. Halili also documented that Mr. Sylejmani suffered from bilateral radiculopathy, increased and constant back pain, numbness and fatigue in his lower extremities, and the inability to walk or stand for long periods of time. As a result of these conditions, Mr. Sylejmani was prescribed a number of medications to manage his daily pain.

21. Dr. Halil opined that Mr. Sylejmani's back injury made him permanently disabled.

22. Mr. Sylejmani applied for disability benefits with Lloyd's of London in March 2018.

---

[2] https://www.physio-pedia.com/Spondylodiscitis

23. On April 1, 2019, Lloyd's of London denied Mr. Sylejmani's disability claim. In doing so, it concluded that he suffered from degenerative changes in his back, and there was no evidence of an acute injury. It also contended that he did not receive appropriate medical care. Finally, Lloyd's of London claimed that Mr. Sylejmani suffered from psychiatric conditions that would fall under the Policy's exclusion for Sickness and Mental and Nervous Disorders.

24. Mr. Sylejmani submitted an appeal on May 30, 2019. In the appeal, he explained that the alleged physical altercation with a co-worker was falsified. He provided additional detail about his February 2018 MRI and how it evidenced an injury, not degenerative disease. Finally, he noted that Lloyd's of London denied his claim without even bothering to get a single page of his medical records before the date of his injury.

25. Lloyd's of London denied the appeal on July 22, 2019.

26. Mr. Sylejmani submitted a second appeal on October 17, 2019. In the second appeal, he pointed out that Lloyd's of London wrongly concluded that simply because Mr. Sylejamani "may" have the presence of degenerative changes in his back, there was no evidence of an injury. Under this approach, no claimant with degenerative changes in his back could ever be approved for disability.

27. Lloyd's of London, through its legal counsel, denied Mr. Sylejmani's second appeal on January 3, 2020. In denying the second appeal, Lloyd's of London denied some obvious facts. For instance, it referred to an "alleged accident", even though there was no dispute that Mr. Sylejmani hurt his back on February 7, 2018, did not fake his injury, and did not commit fraud. It now claimed that he admitted to "brutally beating his employee". It also claimed that there was no verifiable, independent

evidence of Mr. Sylejmani's disability. Finally, it accused Dr. Halili of medical malpractice. Each of Lloyd's of London's allegations was wrong.

28. Having exhausted his administrative remedies, Plaintiff brings this action to recover the LTD benefits promised in the Policy.

## Breach of the Insurance Contract

29. Plaintiff incorporates the preceding factual allegations.

30. At all material times, the Policy was in full force and effect. All of the premium payments were timely paid by Mr. Sylejmani.

31. If he became totally disabled, Lloyd's of London was to pay for his accidental permanent total disability insurance benefit. However, Lloyd's of London breached its duty under the Policy by failing and refusing to pay under the Policy as promised.

32. In breaching the Policy, Lloyd's of London did not apply the common or ordinary meaning to the Policy terms in its application of those terms to the facts of this claim. Alternatively, the terms as interpreted by Lloyd's of London were ambiguous and must be construed in favor of Mr. Sylejmani.

33. Mr. Sylejmani has been damaged and is entitled to damages from Lloyd's of London as a result of its breach.

34. The face value of the Policy was $500,000. Lloyd's of London has refused to pay the Policy proceeds. For such damages, Mr. Sylejmani now sues for recovery.

## Claim for Attorneys' Fees and Costs

35. This suit was made necessary by the wrongful acts and practices of Lloyd's of London. Mr. Sylejmani has been forced to retain attorneys to prosecute his claims, for which he has agreed to pay a reasonable attorneys' fee. In this regard, he is

entitled to recover his reasonable attorneys' fees and expenses incurred and to be incurred in this action for the full prosecution of this claim through trial and appeal, if any, that are reasonable and necessary for him to obtain the relief he seeks. Accordingly, Mr. Sylejmani further seeks recovery of his reasonable attorneys' fees incurred and to be incurred in the prosecution of this action pursuant to pursuant to Section 38.001, *et. seq.* of the Texas Civil Practice and Remedies Code, and any all other applicable Texas law.

## General Claims

36. All notices required to be given have been given, and all conditions precedent have been satisfied.

37. Plaintiff requests prejudgment interest, as well as interest required by the Policy.

## Demand for Jury Trial

38. Plaintiff demands a jury trial.

## Prayer

Sylejman Sylejmani, Plaintiff, respectfully prays that upon trial of this matter or other final disposition, this Court find in his favor and against Defendant, and issue judgment against Defendant as follows:

    A. That Defendant pays to Plaintiff all benefits due and owing in accordance with the terms of the Policy, as well as all prejudgment interest due thereon and as allowed by law and equitable principles;

    B. That Defendants pay all reasonable attorneys' fees incurred and to be incurred by Plaintiff in obtaining the relief sought herein, along with the costs associated with the prosecution of this matter; and

C.      All such other relief, whether at law or in equity, to which Plaintiff may show himself justly entitled.

Respectfully submitted,

By: `/s/ Amar Raval`
Amar Raval, TBA #24046682
S.D. No. 619209
Berg Plummer Johnson & Raval LLP
3700 Buffalo Speedway, Suite 1150
Houston, TX 77098
(713) 526-0200
(832) 615-2665 (Fax)
araval@bergplummer.com

ATTORNEYS FOR PLAINTIFF